JAMES F. CLAPP (145814)
J. KIRK DONNELLY (179401)
MARITA MURPHY LAUINGER (199242)
DOSTART CLAPP GORDON & COVENEY, LLP
4370 La Jolla Village Dr. Ste. 970
San Diego, CA 92122
Tel. (858) 623-4200
Fax. (858) 623-4299

KEVIN J. MCINERNEY (46941)
MCINERNEY & JONES
18124 Wedge Parkway #503
Reno, NV 89511
Tel. (775) 849-3811
Fax. (775) 849-3866

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREW TAKACS and RYAN FLYNN, individually, and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>vs.<br><br>A.G. EDWARDS & SONS, INC.<br><br>            Defendants. | CASE NO. 04 CV 1852 JAH(NLS)<br><br>**PLAINTIFFS' <u>UNOPPOSED</u> MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      August 6, 2007<br>Time:     2:30 p.m.<br>Ctrm:    11<br><br>Hon. John A. Houston |

1

## TABLE OF CONTENTS

2   TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

3   TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

4   I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

5   II.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

6   III. SUMMARY OF CLAIMS AT ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

7        A. Plaintiffs' Federal Overtime Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

8        B. Plaintiffs' California Overtime Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

9        C. Plaintiffs' Claims for Wage Deductions . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

10  IV.  SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT . . . . . . . . . . .  7

11  V.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT . . . .  8

12       A. The Strength of Plaintiffs' Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

13       B. The Risk, Expense, Complexity and Likely Duration of Further Litigation . . . .  11

14       C. The Risk of Maintaining Class Action Status Throughout the Trial . . . . . . . . . .  12

15       D. The Amount Offered in Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

16       E. The Extent of Discovery Completed and the Stage of the Proceedings . . . . . . .  13

17       F. The Experience and Views of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

18       G. The Reaction of the Class to the Settlement . . . . . . . . . . . . . . . . . . . . . . . . . .  14

19  VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**CALIFORNIA CASES**

Cortez v. Purolator Air Filtration Products Co.
23 Cal.4th 163, 178-79 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hudgins v. Neiman-Marcus Group, Inc.
34 Cal.App.4th 1109 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Kerr's Catering v. Department of Industrial Relations
57 Cal.2d 319, 329 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

Koehl v. Verio
142 Cal.App.4th 1313 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

Prachasaisoradej v. Ralphs Grocery
102 P.3d 903 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

Quillian v. Lion Oil Company
96 Cal.App.3d 156 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ramirez v. Yosemite Water Co., Inc.
20 Cal.4th 785, 797-98 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Steinhebel v. Los Angeles Times Communications
26 Cal.App.4th 696 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 , 11

**FEDERAL CASES**

Arnold v. Ben Kanowsky, Inc.
361 U.S. 388, 392 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Auer v. Robbins
519 U.S. 452, 461 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Class Plaintiffs v. Seattle
955 F.2d 1268, 1276 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 12

Garett v. Morgan Stanley DW, Inc.
Case No. 04-CV-1858 BEN (S.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Gautreaux v. Pierce
690 F.2d 616, 621 n.3 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

Hanlon v. Chrysler Corp.
150 F.3d 1011, 1026 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Linney v. Cellular Alaska Partnership
151 F.3d 1234, 1242 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Miller v. Farmers Insurance Exchange
2007 U.S. App. LEXIS 7403 (9th Cir. Mar. 30, 2007) . . . . . . . . . . . . . . . 4, 11

Officers for Justice v. Civil Service Commission
688 F.2d 615, 625 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>In re Pacific Enter. Sec. Litig.</u>
47 F.3d 373 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>In re Traffic Executive Association-Eastern Railroads</u>
627 F.2d 631 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Vizcaino v. Microsoft Corp.</u>
290 F.3d 1043 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.</u>
396 F.3d 96, 116 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**REGULATIONS AND STATUTES**

Cal. Labor Code § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cal. Lab. Code § 510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Cal. Lab. Code § 515 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Cal. Labor Code § 515(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Cal. Labor Code § 226.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cal. Labor Code § 1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cal. Labor Code § 2802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 12

29 C.F.R. § 541.200(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 C.F.R. § 541.200(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 C.F.R. § 541.203(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 C.F.R. § 541.203(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 C.F.R. § 541.600 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

Fed. R. Civ. P. 30(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

29 U.S.C. § 207(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**SECONDARY AUTHORITIES**

<u>Manual for Complex Litigation, Third</u>, § 30.41 . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Manual for Complex Litigation, Third</u>, § 30.42 . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Manual for Complex Litigation, Fourth</u>, § 21.632 (2004) . . . . . . . . . . . . . . . . . . . . . . 1

1  Newberg on Class Actions, § 11.25, at pp. 38-39 (4th ed. 2002)  . . . . . . . . . . . . . . . . . . . . .  9

2  U.S. Department of Labor, Nov. 27, 2006 Opinion Letter  . . . . . . . . . . . . . . . . .  2, 4, 10, 13

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION.

In this unopposed motion, plaintiffs and proposed class representatives DREW TAKACS, RYAN FLYNN, and CAITLIN MANOOGIAN ("plaintiffs") seek preliminary approval of a $20,000,000 classwide settlement reached on behalf of a class of approximately 1,300 current and former employees of defendant A.G. EDWARDS & SONS, INC. ("AGE").  Plaintiffs allege that AGE misclassified its California-based stock brokers, known as Financial Consultants ("FCs"), as "exempt" employees, thereby denying them overtime pay in violation of federal and California law.  Plaintiffs also claim that AGE took illegal deductions from the class members' wages to pay for expenses that AGE should have borne as ordinary costs of doing business.

This settlement is the product of over a year of adversarial negotiations, facilitated by two highly-respected mediators.  All of the terms of the settlement are memorialized in the "Stipulation of Settlement" ("Stipulation"), filed herewith.

Under Fed. R. Civ. P. 23(e), class actions may be settled only with court approval.  The approval process consists of two steps.  In this first step, the Court makes a preliminary evaluation of fairness of the settlement.  <u>Manual for Complex Litigation, Fourth</u>, section 21.632 (2004).  If the proposed settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the parties to give notice of the proposed settlement to the class members. <u>Gautreaux v. Pierce</u>, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

As discussed below, the proposed settlement falls well within the "range of possible approval," particularly in light of the substantial risks and costs associated with further litigation.  Furthermore, the settlement is entitled to a presumption of fairness, since it was reached through arm's-length bargaining between experienced counsel, after a thorough exchange of formal and informal discovery.

Accordingly, plaintiffs respectfully request that the Court: (1) preliminarily approve the proposed settlement, (2) conditionally certify the class described herein for settlement purposes, (3) authorize the mailing of the proposed class notice to the class members, and (4) schedule a final approval hearing approximately 135 days after the Court enters its order granting preliminary approval. The parties are working on a proposed order and will submit it in advance of the hearing.

## II.    FACTUAL BACKGROUND.

TAKACS filed the instant lawsuit in the San Diego Superior Court on June 30, 2004.   On September 14, 2004, AGE removed the action to this Court based on federal question and supplemental jurisdiction under 28 U.S.C. sections 1332 and 1367.   On December 9, 2004, TAKACS filed a First Amended Complaint adding FLYNN as a named plaintiff and proposed class representative.   On September 27, 2005, the Court granted plaintiffs' motion to file a Second Amended Complaint.   The Second Amended Complaint alleges the following causes of action on behalf of AGE's California-based Financial Consultants and Trainees:   (1) restitution of overtime pay due to FCs under the FLSA; (2) restitution of overtime pay due to FCs under California law; (3) recovery of overtime pay due to FCs pursuant to Cal. Labor Code section 1194; (4) restitution of wage deductions on behalf of FCs; (5) restitution overtime pay due to Trainees under California law; (6)  recovery of overtime pay due to Trainees pursuant to Cal. Labor Code section 1194; (7) premium pay for missed meal and rest breaks under Cal. Labor Code section 226.7 on behalf of FCs and Trainees; (8) restitution of business-related expenses on behalf of FCs and Trainees; (9) recovery of business-related expenses pursuant to Cal. Labor Code section 2802 on behalf of FCs and Trainees; and (10) waiting time penalties pursuant to Cal. Labor Code section 203.

On August 16, 2005, TAKACS and FLYNN filed a motion seeking leave to add MANOOGIAN as a proposed class representative.   The Court granted this motion on March 9, 2006, but ruled that it was not necessary for plaintiffs to file a new complaint.   Accordingly, the Second Amended Complaint remains the operative pleading.

On January 30, 2006, AGE filed a motion for summary judgment as to the claims of the named plaintiffs.   This Court denied AGE's motion in an order dated August 2, 2006.   Meanwhile, on February 9, 2006, plaintiffs filed their motion for class certification, which then was withdrawn by stipulation and re-filed on March 27, 2006.   In that motion, plaintiffs sought to certify only their first, second, third, eighth, ninth, and tenth causes of action alleged in the Second Amended Complaint, on behalf of FCs only.   The hearing on plaintiffs' class certification motion was continued several times.   On December 18, 2006, plaintiffs withdrew the motion to permit them to take discovery concerning an opinion letter issued by the U.S. Department of Labor on November 27, 2006.

1    Since the first complaint was filed in June 2004, the parties have conducted substantial formal and

2    informal discovery.  Plaintiffs deposed AGE's corporate executives over a broad range of FRCP 30(b)(6)

3    topics, and AGE deposed TAKACS, FLYNN and MANOOGIAN for a full day each.  The parties

4    exchanged multiple sets of written discovery, and plaintiffs reviewed over 13,000 pages of policies

5    manuals, training materials, personnel files, and other corporate documents produced by AGE.  In

6    addition, plaintiffs interviewed and/or obtained statements from over 50 putative class members, and

7    AGE interviewed and/or obtained statements from at least 140 putative class members.

8    The parties attended two separate mediations in this case. The first occurred on December 13,

9    2005, before the Hon. William Cahill (Ret.), a retired judge and well-respected mediator with JAMS.

10   The parties were not able to resolve the case at that mediation. The second mediation occurred on

11   October 30, 2006, before Linda Singer, another highly-respected mediator with JAMS.  Although the

12   case did not settle at the second mediation, the parties continued their dialogue with Ms. Singer's

13   assistance and, on February 14, 2007, the parties reached the tentative settlement memorialized in the

14   Stipulation of Class Action Settlement filed herewith.   At all times, the extensive and lengthy settlement

15   negotiations have been adversarial, non-collusive, and conducted at arm's-length. All of the terms of the

16   settlement are contained in the Stipulation.  There are no undisclosed side agreements between the parties

17   or their counsel.  Declaration of James F. Clapp, filed herewith, ¶ 5.

18   **III.    <u>SUMMARY OF CLAIMS AT ISSUE.</u>**

19   The Settlement, if approved by the Court, would resolve all pending federal and state claims

20   between the plaintiffs, the class, and AGE.  Those claims are described below:

21   A.    <u>Plaintiffs' Federal Overtime Claims.</u>

22   Under the FLSA, all employees, regardless of their title, must be paid overtime for any hours they

23   work in excess of 40 per week, unless the employee is "exempt."  29 U.S.C. section 207(a)(1).  The

24   employer bears the burden of proving that the employee is exempt from overtime.  <u>Arnold v. Ben</u>

25   <u>Kanowsky, Inc.</u>, 361 U.S. 388, 392 (1960). Plaintiffs contend FCs do not meet the test for exempt status

26   under the FLSA.  Conversely, AGE contends they do qualify as "exempt" under several exemptions,

27   including but not limited to the "administrative" exemption.

28   /////

1    In order to qualify for the administrative exemption, an employee must be paid on a salary or fee

2  basis.  29 C.F.R. section 541.200(a)(1).  One of the key disputes in this case is whether the guaranteed

3  monthly draw that AGE makes to its FCs qualifies as a "salary" for purposes of the salary basis test.

4  Although this Court, in its August 2, 2006 order denying AGE's summary judgment motion, held that

5  AGE failed to meet its burden of showing that its draw-versus-commission plan meets the salary basis

6  test, the U.S. Department of Labor reached a different conclusion in a November 27, 2006 opinion letter.

7  In that letter, the DOL opined that a guaranteed draw meets the salary basis test – even if draw deficits

8  are recouped from commissions in later months – provided that the amount of the draw does not fall

9  below the FLSA's minimum salary threshold (currently $455/week, or $1,971.67/month).  See Nov. 27,

10  2006 Opinion Letter, at 7-8; attached as Exh. 4 to the Compendium of Authorities, filed herewith.  The

11  DOL letter is significant because the salary basis test is a "creature of the Secretary [of Labor]'s own

12  regulations," and the DOL's interpretation is controlling "unless plainly erroneous or inconsistent with

13  the regulation."  Auer v. Robbins, 519 U.S. 452, 461 (1997).

14    Another element of the administrative exemption is the "duties" test.  29 C.F.R. section

15  541.200(a)(2).  Plaintiffs claim FCs are not administratively exempt because their primary duty is selling

16  financial products.  See 29 C.F.R. section 541.203(a).  Conversely, AGE contends that an FC's primary

17  duty is to analyze the customer's financial information and advise the customer about which financial

18  products best meet the customer's needs, which is exempt work.  Id.  In its November 27, 2006 opinion

19  letter, the DOL opined that stockbrokers meet the duties test of the administrative exemption even

20  though they spend some of their time selling financial products.

21    The Ninth Circuit has recently signaled an inclination to defer to the DOL when interpreting the

22  FLSA.  In Miller v. Farmers Insurance Exchange, 2007 U.S. App. LEXIS 7403 (9th Cir. Mar. 30, 2007),

23  the Ninth Circuit reversed an award of $52.5 million in overtime pay to a class of Farmers claims

24  adjusters, relying in part on a DOL opinion letter holding that claims adjusters are administratively exempt

25  under the FLSA.  Here, the DOL's November 27, 2006 opinion letter holding that stockbrokers are

26  exempt presents a significant risk to plaintiffs.

27  /////

28  /////

B.    Plaintiffs' California Overtime Claims.

Under California law, all employees must be paid overtime for any hours they work in excess of 40 per week, or 8 per day unless the employee is "exempt."  Cal. Lab. Code sections 510 and 515. California's administrative exemption is narrower and more favorable to employees that the comparable FLSA exemption, in that: (1) California has adopted a purely quantitative test for measuring exempt status (i.e., an exempt employee must spend 50% or more of his or her time on exempt administrative tasks) as opposed to the qualitative "primary duty" test under the FLSA (see Ramirez v. Yosemite Water Co., Inc., 20 Cal.4th 785, 797-98 (1999)); and (2) California's administrative exemption requires that the employee be paid a guaranteed minimum amount of not less than twice the California minimum wage (prior to January 1, 2007, equivalent to $2,340/month), whereas the FLSA's salary requirement was only $671.67/month until August 23, 2004, and $1,971.67/month thereafter (compare Cal. Labor Code section 515(a) with 29 C.F.R. section 541.600).  Furthermore, California's commissioned sales exemption differs from the FLSA exemption in that California's exemption requires that an employee be "involved principally in selling a product or service."  Ramirez, 20 Cal.4th at 804.  Plaintiffs argue that California's commissioned sales exemption is inconsistent with the FLSA's administrative exemption, since an employee cannot simultaneously be involved principally in sales yet administratively exempt.  See 29 C.F.R. section 541.203(b) ("[A]n employee whose primary duty is selling financial products does not qualify for the administrative exemption.")  In other words, under plaintiffs' theory, if AGE attempts to invoke the California commissioned sales exemption, this would prevent AGE from invoking the FLSA's administrative exemption, and vice-versa.  AGE contends, however, that these exemptions are not mutually exclusive, and that an employee can qualify as exempt under both exemptions.  There is no controlling appellate authority on this issue.

C.    Plaintiffs' Claims for Wage Deductions.

Plaintiffs also seek recovery of certain expenses that, in their view, were improperly deducted from the wages of FCs.  These include wages of the support staff, losses due to trading errors, marketing expenses, registration fees, and similar charges.  AGE contends that these challenged practices are part of lawful commission calculations, or are expenses incurred voluntarily by the FCs.

/////

1    The wage deduction and business expense claims are based on both statutory authority and a long

2    line of cases beginning with the California Supreme Court's decision in <u>Kerr's Catering v. Department</u>

3    <u>of Industrial Relations</u>, 57 Cal.2d 319, 329 (1962).  In <u>Kerr's</u>, the court upheld an administrative

4    regulation that prevented an employer from deducting losses due to cash shortages from an employee's

5    commissions, observing that such shortages were inevitable in any business and, therefore, should be

6    considered an ordinary cost.  Later, in <u>Quillian v. Lion Oil Company</u>, 96 Cal.App.3d 156 (1979) and

7    <u>Hudgins v. Neiman-Marcus Group, Inc.</u>, 34 Cal.App.4th 1109 (1995), California appellate courts relied

8    on <u>Kerr's</u> to invalidate compensation plans in which business-related expenses were deducted from

9    employee incentive pay.  Plaintiffs argue that <u>Kerr's</u>, <u>Quillian</u>, and <u>Hudgins</u> prevent AGE from deducting

10   business costs from FC commissions since these costs are "expenses of management."  <u>Kerr's</u>, 57 Cal.2d

11   at 329.

12        Plaintiffs also rely on Cal. Labor Code section 2802 in support of their wage deduction claims.

13   Section 2802 requires an employer to indemnify an employee against all "necessary" expenses the

14   employee incurs in the course of his or her job.  Plaintiffs argue that the payments to the support staff and

15   the other business-related expenses are "necessary" because, without making such payments, the FCs

16   cannot succeed on the job.

17        AGE contests the validity of plaintiffs' wage deduction claims.  AGE points to the recent

18   decisions in <u>Steinhebel v. Los Angeles Times Communications</u>, 26 Cal.App.4th 696 (2005) and <u>Koehl</u>

19   <u>v. Verio</u>, 142 Cal.App.4th 1313 (2006), and argue these cases suggest it is lawful for employers to adjust

20   employee compensation for certain business-related expenses.  AGE also argues that the validity of the

21   <u>Kerr's</u> line of cases is questionable in light of the California Supreme Court's grant of review in

22   <u>Prachasaisoradej v. Ralphs Grocery</u>, 102 P.3d 903 (review granted December 14, 2004), wherein the

23   court will decide whether a compensation plan that includes business expenses in its compensation

24   formula is legal under California law.  Lastly, AGE will argue that it pays all "necessary" expenses on

25   behalf of its FCs, and any additional expenses they may incur are voluntary.  In its ruling on AGE's

26   summary judgment motion, this Court ruled that whether an expense is "necessary" is a question of fact

27   and, accordingly, it is unlikely that this issue can be resolved short of trial.

28   /////

**IV.**     **SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT**

The proposed settlement calls for certification of the following class for settlement purposes only: "All persons who were employed by AGE as Financial Consultants in the State of California at any time between June 30, 2000 and May 31, 2007 (the 'Class Period')."  Stipulation, ¶ III.A.  The Class Period is co-extensive with the four-year statute of limitations for recovery of wages under California's Unfair Competition Law.  <u>Cortez v. Purolator Air Filtration Products Co.</u>, 23 Cal.4th 163, 178-79 (2000).

Under the terms of the Stipulation, each class member will receive a Notice of Class Action Settlement in the form attached as Exhibit 2 to the Stipulation ("Class Notice").  The parties will retain the professional claims administration firm of Rust Consulting, Inc. (the "Claims Administrator") to mail the Class Notice and perform other required claims administration services.  Stipulation, ¶¶ V.A, IX.A.  The Class Notice describes the litigation, the terms of the settlement, and each class member's options with regard to the proposed settlement.  Stipulation, Exhibit 2.  The Class Notices will be sent, via First Class mail, to the last-known address of each class member along with a postage pre-paid return envelope.  Stipulation, ¶ IX.A.  Prior to mailing the Class Notices, the Claims Administrator will consult the United States Postal Service's National Change of Address database in an effort to update the class members' addresses.  <u>Id.</u>  In addition, to the extent any Class Notice is returned to the Claims Administrator as undeliverable, the Claims Administrator will perform a skip trace and mail the Class Notice and other settlement documents to the new address.  Stipulation, ¶ IX.D.  Finally, to the extent a class member has not yet responded to the Class Notice, the Claims Administrator will send that person a postcard reminding him or her of the deadline for submitting claims.  Stipulation, ¶ IX.E.

As explained thoroughly in the Class Notice, individuals who do not wish to be part of the class may request exclusion.  Those individuals who timely submit a request for exclusion will not receive a settlement payment, but also will not be subject to the release of claims.  Stipulation, ¶ IX.H.   In addition, as explained in the Class Notice, class members also have an opportunity to object to the settlement.  Stipulation, ¶ IX.G.

Upon the Effective Date of the Stipulation, all class members will be deemed to have released the following known and unknown claims arising during the Class Period: (a) all claims for the failure to pay overtime, or damages for missed rest and meal periods, based on the alleged misclassification of FCs; (b)

1    all claims alleging the improper imposition of costs or penalties for errors or mistakes of FCs, including

2    without limitation claims for improper trading error chargebacks or deductions; (c) all claims for

3    reimbursement of business expenses; and (d) all claims for penalties or additional damages which allegedly

4    arise from the claims described in (a) through (c).  Stipulation, ¶ X.

5    Class members who submit timely claim forms will receive payment based on the number of

6    months they were employed as an FC.  Stipulation, ¶¶ VIII.A-F.  The parties currently estimate that,

7    following deduction of the proposed attorney's fees, litigation costs, the class representative awards, and

8    costs of administration (all subject to Court approval), approximately $13,750,000 will remain for

9    distribution to the class members.  Clapp declaration, ¶ 6.

10   The Stipulation provides that plaintiffs' attorneys are entitled to request an award of attorney's

11   fees of up to $6 million.  This amount represents 28.17% of the total benefit that the class has received

12   as a result of the lawsuit.  In addition to the $20,000,000 settlement fund, in December 2004 (six months

13   after this lawsuit was filed), AGE paid the class members $1,300,000 in an effort to retroactively satisfy

14   the California salary basis test.  This payment would not have been made but for the efforts of plaintiffs'

15   counsel.  Clapp declaration, ¶ 6.[1]  Class Counsel also are entitled to request reimbursement of litigation

16   costs of up to $100,000 in addition to the request for attorney's fees.  Id.  Also, plaintiffs' attorneys will

17   request a Class Representative Award for TAKACS, FLYNN and MANOOGIAN in the amount of

18   $25,000 each, to compensate them for the time they spent, and the risk they undertook, in bringing the

19   litigation on behalf of the class.  Stipulation, ¶ VII.

20   **V.      THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.**

21   There is a strong judicial policy favoring settlements, particularly in complex class actions.  Class

22   Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  "Litigation settlements offer parties and their

23   counsel relief from the burdens and uncertainties inherent in trial . . . .  The economics of litigation are

24

25   _____

26   [1]   Although the Ninth Circuit benchmark for attorney's fees is 25%, the Court has the discretion
     to adjust a fee award upward in light of factors such as the complexity of the case, the novelty
     of the arguments, the risk undertaken by plaintiffs' counsel, and the results achieved.  Vizcaino

27   v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002) (affirming award of $27 million
     calculated as 28% of fund recovered); In re Pacific Enter. Sec. Litig., 47 F.3d 373 (9th Cir. 1995)

28   (affirming 33% fee award).  As Class Counsel will show in connection with the motion for final
     approval, all of these factors warrant an upward adjustment in this case.

1 such that pretrial settlement may be more advantageous for both sides than expending the time and

2 resources inevitably consumed in the trial process." <u>Id.</u>

3      In class action cases, the district court must approve any settlement. Fed. R. Civ. P. 23(e).  As

4 explained in the <u>Manual for Complex Litigation, Third</u>, court approval of a class action settlement is a

5 two-step process:

6       "First, counsel submit the proposed terms of the settlement and the court makes a preliminary
        fairness evaluation . . . .  If the preliminary evaluation of the proposed settlement does not
7       disclose ground to doubt its fairness or other obvious deficiencies, such as unduly preferential
        treatment of Plaintiffs or of segments of the class, or excessive compensation for attorneys, and
8       appears to fall within the range of possible approval, the court should direct that notice under
        Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and
9       evidence may be presented in support of and in opposition to the settlement.  <u>Manual for
        Complex Litigation, Third</u>, § 30.41, pp. 236-37.
10

11      The "universal standard" in evaluating the fairness of a settlement under Fed. R. Civ. P. 23(e) is

12 whether the settlement is "fundamentally fair, adequate and reasonable."  <u>Officers for Justice v. Civil

13 Service Commission</u>, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he court's intrusion upon what is otherwise

14 a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

15 necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching

16 by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

17 reasonable and adequate to all concerned."  <u>Id.</u>

18      As the Ninth Circuit aptly recognized, "the very essence of a settlement is compromise."  <u>Id.</u> at

19 624.  "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive

20 litigation that induce consensual settlements. The proposed settlement is not to be judged against a

21 hypothetical or speculative measure of what might have been achieved by the negotiators."  <u>Linney v.

22 Cellular Alaska Partnership</u>, 151 F.3d 1234, 1242 (9th Cir. 1998), <u>citing</u>, <u>Officers for Justice</u>, 688 F.2d

23 at 625.  Even if a proposed settlement amounts to a fraction of the potential recovery, this does not mean

24 that the settlement is necessarily inadequate.  <u>Linney</u>, 151 F.3d at 1242.

25      Preliminary approval should be granted if the proposed settlement falls "within the range of

26 possible final approval."  <u>Gautreaux</u>, 690 F.2d at 621 n.3; Conte & Newberg, <u>Newberg on Class Actions</u>,

27 § 11.25, at pp. 38-39 (4th ed. 2002).  Stated another way, preliminary approval is "a determination that

28 there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-

1  scale hearing as to its fairness." In re Traffic Executive Association-Eastern Railroads, 627 F.2d 631,

2  634 (2d Cir. 1980).

3        A proposed settlement is presumed to be fair when (1) it is reached through arm's-length

4  negotiations, (2) the putative class is represented by experienced counsel, and (3) the parties have

5  conducted sufficient discovery. Manual for Complex Litigation, Third, § 30.42, p.240; Wal-Mart Stores,

6  Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005).  Here, all of the factors giving rise to a

7  presumption of fairness exist. First, the proposed settlement was the product of arm's-length, non-

8  collusive negotiations, overseen by two well-respected independent mediators.  Clapp declaration, ¶ 5;

9  McInerney declaration ¶ 8.  Second, plaintiffs are represented by experienced counsel.  Clapp declaration,

10  ¶ 2; McInerney declaration, ¶¶ 2-7.   Third, the parties exchanged a significant amount of information,

11  both formally and informally.  Clapp declaration, ¶ 3.

12        In evaluating the fairness of a settlement, the district court should weigh the following factors:

13  "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation;

14  the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent

15  of discovery completed and the stage of the proceedings; the experience and views of counsel; the

16  presence of a governmental participant; and the reaction of the class members to the proposed

17  settlement." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  In addition, the district

18  court should satisfy itself that the settlement is not the product of collusion between the plaintiffs and the

19  defendant.  Class Plaintiffs, 955 F.2d. at 1290.  Here, except for the fact that there is no governmental

20  participant, each factor weighs in favor of approving the settlement.

21        A.     The Strength of Plaintiffs' Case.

22        Although plaintiffs and their counsel believe strongly in the merits of their case, there is a

23  significant risk that they might not prevail, either in this Court, or alternatively in the Ninth Circuit.  This

24  case involves novel theories and unsettled questions of law.  Notably, there is not a single reported case

25  that holds that financial advisors are entitled to overtime pay under either federal or state law.  To the

26  contrary, the DOL's November 27, 2006 opinion letter supports AGE's position that FCs are exempt.

27  As noted previously, the Ninth Circuit has recently indicated a willingness to defer to the DOL's

28  /////

1  interpretation of the FLSA.  Miller v. Farmers Insurance Exchange, 2007 U.S. App. LEXIS 7403 (9th

2  Cir. Mar. 30, 2007).

3      Plaintiffs' claims for recovery of business-related expenses are also untested.  Plaintiffs analogize

4  AGE's compensation plan to the commission plan found unlawful by the California Supreme Court in

5  Kerr's Catering, 57 Cal.2d at 319.  However, more recently, in Steinhebel, 26 Cal.App.4th at 696, and

6  Koehl, 142 Cal.App.4th at 1313, the California appellate court held that incentive plans that deduct

7  certain business-related expenses from the employees' commissions are lawful.  Adding to the confusion,

8  the California Supreme Court has granted review in a case entitled Prachasaisoradej v. Ralphs Grocery,

9  102 P.3d 903 (review granted December 14, 2004), wherein the court will decide whether a

10  compensation plan that includes business expenses in its compensation formula is legal under California

11  law.  That decision is not expected for several months or more.  Thus, even if plaintiffs were to prevail

12  on their claims for recovery of business expenses in this Court, any judgment would have been subject

13  to reversal depending on the outcome of Prachasaisoradej.

14      In summary, unlike a garden-variety securities class action, where the law is relatively settled and

15  the path to recovery has been paved by a prior SEC or criminal investigation, here plaintiffs and their

16  counsel are operating in completely uncharted territory.  In light of this uncertainty, the "strength of

17  plaintiffs' case" factor weighs in favor of settlement.

18      B.    The Risk, Expense, Complexity and Likely Duration of Further Litigation.

19      This case involves nearly 1,300 class members and six causes of action for which certification was

20  sought. If this case had not settled, class certification, discovery, and trial preparation would have been

21  extremely time consuming and expensive.

22      First, as the Court is aware,  the motion for class certification has been hotly contested.  Indeed,

23  the fully briefed class certification motion and supporting evidence, as well as the opposing submissions,

24  are collectively more than two feet thick.  Second, if the Court granted plaintiffs' motion and certified

25  the class, AGE would have sought to take the depositions of a cross-section of the class.  In a class of

26  this size, this might have entailed at least 100 class member depositions, which would have been a costly

27  and time-consuming exercise. Third, in overtime class actions, the parties often retain job analysis experts

28  to assess how class members spend their time.  The cost of these experts could easily have run into the

1  hundreds of thousands of dollars. Fourth, even if discovery proceeded smoothly, the case would not have

2  been ready for trial until at least 2008, and if plaintiffs won, AGE would have appealed, thereby delaying

3  payment to the class for several more years.

4         Given that this case involves a novel application of the overtime laws to positions that have

5  historically been regarded as exempt, the risk, expense, and delay associated with litigating the case

6  through trial is substantial. Therefore, this factor weighs in favor of approving the settlement.

7         C.      The Risk of Maintaining Class Action Status Throughout the Trial.

8         Plaintiffs and Class Counsel strongly believe that their lawsuit is maintainable as a class action.

9  However, there are risks associated with the class certification issue. For example, AGE argued that class

10  certification is inappropriate because the primary duty of an FC varies based on that person's book of

11  business, experience level, training, and business focus (individual versus institutional investors). AGE

12  also argued that an FC's right to recover business expenses depends on whether the particular expense

13  is "necessary" under Cal. Labor Code § 2802, which according to AGE requires an individualized

14  determination. Plaintiffs acknowledge that AGE's arguments do present some risk. Consequently, this

15  factor suggests that settlement is preferable to continued litigation.

16         D.      The Amount Offered in Settlement.

17         According to plaintiffs' damages calculations, the $20 million monetary payment, coupled with

18  the $1.3 million AGE previously paid to class members as a direct result of this case, represents

19  approximately one-third of AGE's overall exposure on the overtime and business expense claims. Clapp

20  declaration, ¶ 7. Viewed another way, this 33% figure equates to a 67% chance of prevailing on class

21  certification and a 50% chance of prevailing on all claims at the time of trial: ($.67 x .50=.33). This risk

22  assessment is reasonable given the novelty of the claims and the uncertainties in the law discussed

23  above.

24         Furthermore, as far as the amount class members will receive on a per month basis, this settlement

25  compares very favorably to the settlement reached in Garett v. Morgan Stanley DW, Inc., Case No. 04-

26  CV-1858 BEN (S.D. Cal.), which was brought on behalf of Morgan Stanley's California-based financial

27  advisors. The Garett case alleged substantially the same claims as this case, and the class members

28  received approximately $219 per month after deduction of attorney's fees, litigation expenses, and cost

of claims administration.  The per-month payment to FCs in this case will likely exceed the amount that Morgan Stanley's financial advisors received, which is a notable achievement in light of the intervening November 27, 2006 DOL opinion letter.  Clapp declaration, ¶ 7.  Accordingly, this factor weighs in favor of approval as well.

      E.    The Extent of Discovery Completed and the Stage of the Proceedings.

As discussed above, in the months leading up to the settlement, the parties exchanged initial disclosures, written discovery, thousands of pages of documents, and took numerous depositions.  The parties litigated a very complex motion for summary judgment and fully briefed a motion for class certification.  Class Counsel fully understood the duties and responsibilities of FCs, AGE's compensation policies, and the composition of the class.  AGE also provided detailed spreadsheets reflecting AGE's potential exposure on the overtime and business expense claims.  Class Counsel has more than enough information to assess the fairness of this settlement.  Clapp declaration, ¶ 3.

      F.    The Experience and Views of Counsel.

Plaintiffs' attorneys are experienced in this area of law.  James F. Clapp of Dostart Clapp Gordon & Coveney, LLP, has been appointed lead plaintiffs' counsel in more than 25 certified class actions alleging violations of federal and/or state wage and hour laws.  Mr. Clapp has testified before the California State Assembly on proposed legislation concerning the deduction of business expenses from commission wages.  Mr. Clapp graduated from Northwestern University School of Law and has been litigating complex employment and business lawsuits, with a special emphasis on wage and hour law class actions, in California for the last 17 years.  Clapp declaration, ¶ 2.

Kevin J. McInerney of McInerney & Jones is also very experienced.  Mr. McInerney graduated from Yale Law School in 1967.  He has tried over 300 cases and handled more than fifty appeals.  Since 1988, his practice has been limited almost exclusively to class actions.  For the past seven years, the vast majority of cases he has handled have been wage and hour class actions brought on behalf of employees.  His firm has been involved in excess of fifty class actions in state and federal courts where it has been alleged that the employees were improperly misclassified as exempt from the protection of overtime laws.  McInerney declaration, ¶¶ 2-7.

/////

1    Both Mr. Clapp and Mr. McInerney support the settlement and believe that the settlement is fair,

2    reasonable, and in the best interests of the class.  Clapp declaration ¶ 7; McInerney declaration, ¶ 8.  This

3    factor weighs in favor of preliminary approval.

4         G.    The Reaction of the Class to the Settlement.

5         To date, no class member has expressed any opposition to the settlement.  Clapp  declaration,

6    ¶ 8.  In any event, class members will have the opportunity to express any opposition during the notice

7    period. Stipulation, ¶ IX.G.

8  **VI.    CONCLUSION.**

9         For all of the foregoing reasons, plaintiffs TAKACS, FLYNN, and MANOOGIAN respectfully

10   request  that the Court (1) grant preliminary approval for the proposed class action settlement, (2) certify

11   the proposed settlement class for settlement purposes only, (3) authorize the mailing of the proposed

12   class action notice, and (4) schedule a final approval hearing approximately 135 days after the Court

13   enters its order granting preliminary approval. An agreed-upon proposed order will be filed in advance

14   of the hearing.

16   Dated: May 25, 2007                    DOSTART CLAPP GORDON & COVENEY, LLP
                                            McINERNEY & JONES

19                                          JAMES F. CLAPP
                                            Attorneys for Plaintiffs

21   75862