1  JAMES F. CLAPP (145814)
   J. KIRK DONNELLY (179401)
2  MARITA MURPHY LAUINGER (199242)
   DOSTART CLAPP GORDON & COVENEY, LLP
3  4370 La Jolla Village Dr. Ste. 970
   San Diego, CA 92122
4  Tel. (858) 623-4200
   Fax. (858) 623-4299
5
   KEVIN J. MCINERNEY (46941)
6  MCINERNEY & JONES
   18124 Wedge Parkway #503
7  Reno, NV 89511
   Tel.  (775) 849-3811
8  Fax. (775) 849-3866

9  Attorneys for Plaintiffs

10

11                    IN THE UNITED STATES DISTRICT COURT

12                   FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  DREW TAKACS and RYAN FLYNN, individually, and on behalf of all others similarly situated, <br><br> 16        Plaintiffs, <br><br> 17  vs. <br><br> 18  A.G. EDWARDS & SONS, INC. <br><br> 19        Defendants. | ) CASE NO. 04 CV 1852 JAH(NLS) <br> ) <br> ) **PLAINTIFFS' MEMORANDUM OF POINTS** <br> ) **AND AUTHORITIES IN SUPPORT OF** <br> ) **UNOPPOSED MOTION FOR FINAL** <br> ) **APPROVAL OF CLASS ACTION** <br> ) **SETTLEMENT** <br> ) <br> ) Date:      November 5, 2007 <br> ) Time:      2:30 p.m. <br> ) Ctrm:      11 <br> ) <br> ) Hon. John A. Houston <br> ) |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................... i

TABLE OF AUTHORITIES ............................................................... ii

I.   INTRODUCTION ..................................................................... 1

II.  FACTUAL BACKGROUND ............................................................. 2

III. SUMMARY OF SETTLEMENT BENEFITS TO THE CLASS ................................... 4

IV.  THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL ........................ 5

    A.  The Strength of Plaintiffs' Case ........................................... 6

        1.  Plaintiffs' FLSA Overtime Claims ....................................... 7

        2.  Plaintiffs' California Overtime Claims ................................. 8

        3.  Plaintiffs' Claims for Wage Deductions ................................. 9

        4.  Summary ............................................................... 10

    B.  The Risk, Expense, Complexity and Likely Duration of Further Litigation .... 10

    C.  The Risk of Maintaining Class Action Status Throughout the Trial ........... 11

    D.  The Amount Offered in Settlement ........................................... 12

    E.  The Extent of Discovery Completed and the Stage of the Proceedings ......... 12

    F.  The Experience and Views of Counsel ........................................ 12

    G.  The Reaction of the Class to the Settlement ................................ 14

V.   CONCLUSION ....................................................................... 14

# TABLE OF AUTHORITIES

**CALIFORNIA CASES**

Bell v. Farmers Insurance Exchange
87 Cal.App.4th 805 (2001) .................................................. 11

Bell v. Farmers Insurance Exchange
115 Cal.App.4th 715 (2004) ................................................. 11

Bell v. Farmers Insurance Exchange
135 Cal.App.4th 1138 (2006) ................................................ 11

Bell v. Farmers Insurance Exchange
137 Cal.App.4th 835 (2006) ................................................. 11

Hudgins v. Neiman-Marcus Group, Inc.
34 Cal.App.4th 1109 (1995) ................................................. 9

Kerr's Catering v. Department of Industrial Relations
57 Cal.2d 319, 329 (1962) .................................................. 9

Koehl v. Verio
142 Cal.App.4th 1313 (2006) ................................................ 9

Prachasaisoradej v. Ralphs Grocery
42 Cal.4th 217 (2007) ...................................................... 10

Quillian v. Lion Oil Company
96 Cal.App.3d 156 (1979) ................................................... 9

Ramirez v. Yosemite Water Co., Inc.
20 Cal.4th 785, 797-98 (1999) .............................................. 8

Steinhebel v. Los Angeles Times Communications
26 Cal.App.4th 696 (2005) .................................................. 9

**FEDERAL CASES**

Arnold v. Ben Kanowsky, Inc.
361 U.S. 388, 392 (1960) ................................................... 7

Auer v. Robbins
519 U.S. 452, 461 (1997) ................................................... 7

Bahramipour v. Citigroup Global Markets Inc.
2006 U.S. Dist. LEXIS 9010 (N.D. Cal. Feb. 22, 2006) ....................... 13

Burns v. Merrill Lynch
Case No. 04-4135-MMC ....................................................... 13

Class Plaintiffs v. Seattle
955 F.2d 1268, 1276 (9th Cir. 1992) ........................................ 5, 6

In Re: Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation
300 F. Supp. 2d 1020 ....................................................... 11

Garett v. Morgan Stanley DW, Inc.
Case No. 04-CV-1858 BEN (S.D. Cal.) .................................. 1, 5, 12, 13

Hanlon v. Chrysler Corp.
150 F.3d 1011, 1026 (9th Cir. 1998) ......................................... 6

Linney v. Cellular Alaska Partnership
151 F.3d 1234, 1242 (9th Cir. 1998) ......................................... 6

Miller v. Farmers Insurance Exchange
2007 U.S. App. LEXIS 7403 (9th Cir. Mar. 30, 2007) .......................... 8, 11

Officers for Justice v. Civil Service Commission
688 F.2d 615, 625 (9th Cir. 1982) ........................................... 5, 6

In re Pacific Enter. Sec. Litig.
47 F.3d 373 (9th Cir. 1995) ................................................. 5

Pontius v. Delta Financial Corp.
2007 U.S. Dist. 50980, *20-22 (W.D. Pa. March 20, 2007)
*adopted at* 2007 U.S. Dist. LEXIS 34393 (W.D. Pa. May 9, 2007) ............. 7

Sommers v. Abraham Lincoln Federal Savings & Loan Association
79 F.R.D. 571 (E.D. Pa. 1978) .............................................. 14

Vizcaino v. Microsoft Corp.
290 F.3d 1043, 1048-50 (9th Cir. 2002) ...................................... 5

**REGULATIONS AND STATUTES**

Bus. & Prof. Code §§ 17200 ................................................. 13

Cal. Labor Code § 203 ...................................................... 2

Cal. Lab. Code § 510 ....................................................... 8

Cal. Lab. Code § 515 ....................................................... 8

Cal. Labor Code § 515(a) ................................................... 8

Cal. Labor Code § 226.7 .................................................... 2

Cal. Labor Code § 1194 ..................................................... 2

Cal. Labor Code § 2802 ................................................. 2, 9, 11

29 C.F.R. § 541.200(a)(1) .................................................. 7

29 C.F.R. § 541.200(a)(2) .................................................. 7

29 C.F.R. § 541.203(a) .................................................... 7, 8

29 C.F.R. § 541.203(b) ..................................................... 8

29 C.F.R. § 541.600 ........................................................ 8


Fed. R. Civ. P. 23 .................................................................................... 13

Fed. R. Civ. P. 30(b)(6) ............................................................................. 3

28 U.S.C. § 1332 ..................................................................................... 2

28 U.S.C. § 1367 ..................................................................................... 2

29 U.S.C. § 207(a)(1) .............................................................................. 7

**SECONDARY AUTHORITIES**

U.S. Department of Labor, Nov. 27, 2006 Opinion Letter .................... 3, 7, 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION.**

In this unopposed motion, plaintiffs and class representatives DREW TAKACS, RYAN FLYNN, and CAITLIN MANOOGIAN ("plaintiffs") seek final approval of a $20,000,000 classwide settlement reached on behalf of a class of 1,305 current and former Financial Consultants ("FCs") employed by defendant A.G. EDWARDS & SONS, INC. ("AGE").

On June 21, 2007, this Court granted preliminary approval of the settlement and conditionally certified the following class: "All persons who were employed by AGE as Financial Consultants in the State of California at any time between June 30, 2000 and May 31, 2007." The Court also approved of the Notice of Class Action Settlement, Claim Form, and Request for Exclusion, all of which were mailed to the class members on July 20, 2007. The class had 60 days, until September 18, 2007, to respond.

This lawsuit involves complex and highly disputed claims, for which there is little applicable case law. Plaintiffs are seeking to apply the federal and state wage and hour laws to positions that have traditionally been treated as exempt. Despite the novelty of these claims and the lack of reported authority, plaintiffs have successfully negotiated a $20 million all-cash settlement of the claims asserted. Additionally, as a direct consequence of the filing of this case, defendant already paid members of the class an additional $1.3 million in a belated effort to comply with the California salary basis test. Together, these payments represent approximately 33% of defendant's overall exposure. As will be addressed in greater detail below, this settlement is very favorable to the class. For instance, compared to the settlement reached in <u>Garett v. Morgan Stanley DW, Inc.</u>, S.D. Cal. Case No. 04-CV1858-BEN, which Judge Benitez approved last year, this settlement pays class members approximately 25% more per tenure month than <u>Garett</u>.

Importantly as well, the class resoundingly approves of this settlement. Once all of the disputed claims are resolved, nearly 95% of the money that was set aside for the class will be paid out to the class. This is a very high claims rate. Furthermore, out of 1,305 class members, only five individuals, representing less than 0.004% of the class, have opted out. Finally, not a single class member has objected to the settlement. In evaluating the overall fairness of the settlement, the Court must weigh

such factors as the strength of the plaintiffs' case, the risk, expense and delay associated with further litigation, the experience and views of Class Counsel, and the reaction of the class to the settlement. As discussed below, all of these factors weigh in favor of approving the settlement. Accordingly, plaintiffs' motion should be granted.[1]

## II. FACTUAL BACKGROUND.

TAKACS filed the instant lawsuit in the San Diego County Superior Court on June 30, 2004. On September 14, 2004, AGE removed the action to this Court based on federal question and supplemental jurisdiction under 28 U.S.C. §§ 1332 and 1367. On December 9, 2004, TAKACS filed a First Amended Complaint adding FLYNN as a named plaintiff and proposed class representative. On September 27, 2005, the Court granted plaintiffs' motion to file a Second Amended Complaint. The Second Amended Complaint alleges the following causes of action on behalf of AGE's California-based Financial Consultants and Trainees: (1) restitution of overtime pay due to FCs under the FLSA; (2) restitution of overtime pay due to FCs under California law; (3) recovery of overtime pay due to FCs pursuant to Cal. Labor Code section 1194; (4) restitution of wage deductions on behalf of FCs; (5) restitution of overtime pay due to Trainees under California law; (6) recovery of overtime pay due to Trainees pursuant to Cal. Labor Code section 1194; (7) premium pay for missed meal and rest breaks under Cal. Labor Code section 226.7 on behalf of FCs and Trainees; (8) restitution of business-related expenses on behalf of FCs and Trainees; (9) recovery of business-related expenses pursuant to Cal. Labor Code section 2802 on behalf of FCs and Trainees; and (10) waiting time penalties pursuant to Cal. Labor Code section 203.

On August 16, 2005, TAKACS and FLYNN filed a motion seeking leave to add MANOOGIAN as a proposed class representative. The Court granted this motion on March 9, 2006, but ruled that it was not necessary for plaintiffs to file a new complaint. Accordingly, the Second Amended Complaint remains the operative pleading.

On January 30, 2006, AGE filed a motion for summary judgment as to the claims of the named plaintiffs. This Court denied AGE's motion in an order dated August 2, 2006. Meanwhile, on February

---

[1] Concurrently herewith, Class Counsel have also filed a motion for an award of attorney's fees, litigation expenses, and service payments to the three Class Representatives.

9, 2006, plaintiffs filed their motion for class certification, which then was withdrawn by stipulation and re-filed on March 27, 2006. In that motion, plaintiffs sought to certify only their first, second, third, eighth, ninth, and tenth causes of action alleged in the Second Amended Complaint, on behalf of FCs only. The hearing on plaintiffs' class certification motion was continued several times. On December 18, 2006, plaintiffs withdrew the motion to permit them to take discovery concerning an opinion letter issued by the U.S. Department of Labor on November 27, 2006.

Since the first complaint was filed in June 2004, the parties have conducted substantial formal and informal discovery. Plaintiffs deposed AGE's corporate executives over a broad range of Fed. R. Civ. P. 30(b)(6) topics, and AGE deposed TAKACS, FLYNN and MANOOGIAN for a full day each. The parties exchanged multiple sets of written discovery, and plaintiffs reviewed over 13,000 pages of policies manuals, training materials, personnel files, and other corporate documents produced by AGE. In addition, plaintiffs interviewed and/or obtained statements from over 50 putative class members, and AGE interviewed and/or obtained statements from at least 140 putative class members. Declaration of James F. Clapp, filed herewith, at ¶ 3.

The parties attended two separate mediations in this case. The first occurred on December 13, 2005, before the Hon. William Cahill (Ret.), a retired judge and well-respected mediator with JAMS. The parties were not able to resolve the case at that mediation. The second mediation occurred on October 30, 2006, before Linda Singer, another highly-respected mediator with JAMS. Although the case did not settle at the second mediation, the parties continued their dialogue with Ms. Singer's assistance and, on February 14, 2007, the parties reached the tentative settlement memorialized in the Stipulation of Class Action Settlement, Docket No. 210. At all times, the extensive and lengthy settlement negotiations have been adversarial, non-collusive, and conducted at arm's-length. All of the terms of the settlement are contained in the Stipulation. There are no undisclosed side agreements between the parties or their counsel. Clapp declaration, ¶¶ 4-5.

On July 20, 2007, the Claims Administrator, Rust Consulting, mailed the Court-approved class notice, claim form, and request for exclusion to the 1,305 class members at their last-known home addresses. Prior to the mailing, the Claims Administrator ran the class members' addresses through the U.S. Postal Service's National Change of Address Database and updated the addresses as necessary. Out

of the 1,305 settlement packages mailed, only 92 were returned as undeliverable. With respect to those 92 returns, seven were forwarded to new addresses, and the Claims Administrator used the class members' social security numbers to run a skip-trace and obtain a new address for 78 of the remaining 85 returned notices. In other words, only 7 out of 1,305 notices were undeliverable. Class members had until September 18, 2007 to return their claim forms, request exclusion, or object to the settlement. On August 31, 2007, the Claims Administrator mailed a reminder postcard to each class member who had not returned a claim form or request for exclusion. See Declaration of Caryn Donly, Claims Administrator, filed herewith.

Of the 1,305 class members, 1,077 have filed claims, which comprises 82.53% of the class. More significantly, these class members worked over 92.3% of the total months worked by all class members during the class period, which according to the Claims Administrator (who has administered more than 250 wage and hour class actions in California) is a high claims rate. Once the outstanding disputes are resolved, the parties anticipate nearly 95% of the funds set aside for the class will have been claimed and paid out. Only five class members, representing less than 0.004% of the class, have opted-out of the settlement.[2] See Donly declaration.

As discussed below, the settlement should be approved in all respects. The settlement is the result of protracted, adversarial, and non-collusive negotiations between experienced and well-informed counsel, all of whom have special expertise in the field of wage and hour law. The settlement is fair, reasonable, and in the best interests of the class members, and it should be approved in its entirety.

## III.   SUMMARY OF SETTLEMENT BENEFITS TO THE CLASS.

The total monetary settlement in this case is $20 million. Additionally, in December 2004 (six months after this lawsuit was filed), AGE paid the class members $1,300,000 in an effort to retroactively satisfy the California salary basis test. This payment would not have been made but for the efforts of plaintiffs' counsel. Clapp declaration, ¶ 11. Accordingly, the actual benefit to the class as a result of this case totals $21.3 million. The $21.3 million total recovery represents approximately 33% of AGE's

---

[2] Nine class members mailed in their claim forms after the September 18, 2007 deadline. Class Counsel are investigating these claims to determine if there is a basis for requesting AGE to honor any of them. Clapp declaration, ¶ 12. The parties will report further to the Court on this issue before or at the November 5, 2007 final approval hearing.

exposure on the California claims. Clapp declaration, ¶ 6.

The $20 million settlement fund will be used to pay: (1) the claims of class members who filed timely and valid claims; (2) the attorney's fees of Class Counsel, up to $6,000,000 (representing 28.17% of the total $21.3 million benefit to the Class),[3] plus Class Counsel's actual litigation costs, both of which are subject to Court approval; (3) enhancements to the three plaintiffs, TAKACS, FLYNN and MANOOGIAN, of up to $25,000 each, subject to Court approval; and (4) the costs and fees of the claims administrator. Any portion of the $20 million that is not claimed or paid out in the form of attorney's fees, litigation expenses, plaintiff enhancements, or claims administration fees, will be returned to AGE.

Each class member who submits a timely and valid claim will receive $275.00 for each month he or she was employed as a Financial Consultant in California during the six-year class period (June 30, 2000 through May 31, 2007). This amount is *after* deduction of all proposed attorney's fees, litigation expenses, plaintiff enhancements, and claims administration fees. In other words, a Financial Consultant who was employed by AGE in California throughout the class period will receive a check for $22,825 (less applicable taxes and withholding). By way of comparison, in Garett v. Morgan Stanley, Case No. 04-CV-1858-BEN, the financial advisors received $219.28 per month in settlement after deduction of attorney's fees, litigation expenses, plaintiff enhancements, and claims administration fees. See Clapp declaration, ¶ 6. Judge Benitez of this Court granted final approval to the Garett settlement on February 17, 2006. Thus, plaintiffs' counsel here have negotiated a settlement that is at least 25% more favorable to the class than the settlement in Garett.

## IV. THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL.

There is a strong judicial policy favoring settlements, particularly in complex class actions. Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). The "universal standard" in evaluating the fairness of a settlement under Fed. R. Civ. P. 23(e) is whether the settlement is "fundamentally fair,

---

[3] Although the Ninth Circuit benchmark for attorney's fees is 25%, the Court has the discretion to adjust a fee award upward in light of factors such as the complexity of the case, the novelty of the arguments, the risk undertaken by plaintiffs' counsel, and the results achieved. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002) (affirming award of $27 million calculated as 28% of fund recovered); In re Pacific Enter. Sec. Litig., 47 F.3d 373 (9th Cir. 1995) (affirming 33% fee award). As Class Counsel demonstrates in their motion for attorney's fees filed concurrently herewith, all of these factors warrant a modest upward adjustment in this case.

adequate and reasonable." Officers for Justice v. Civil Service Comm'n, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Id.

As the Ninth Circuit has aptly recognized, "the very essence of a settlement is compromise." Id. at 624. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998) citing Officers for Justice at 625 (emphasis original). Even if a proposed settlement amounts to a fraction of the potential recovery, this does not mean that the settlement is necessarily inadequate. Linney, 151 F.3d at 1242.

The district court has great discretion in evaluating the fairness of a settlement because the court "is exposed to the litigants, and their strategies, positions and proofs . . . . Simply stated, [the district judge] is on the firing line and can evaluate the action accordingly." Class Plaintiffs, 955 F.2d at 1291. In evaluating the fairness of a settlement, the district court should weigh the following factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). In addition, the district court should satisfy itself that the settlement is not the product of collusion between the plaintiffs and the defendant. Class Plaintiffs, 955 F.2d. at 1290. Here, except for the fact that there is no governmental participant, each factor weighs in favor of approving the settlement.

A.   The Strength of Plaintiffs' Case.

Although plaintiffs and their counsel believe strongly in the merits of their case, plaintiffs concede that this case involves novel theories and unsettled questions of law. Plaintiffs contend that AGE's Financial Consultants are entitled to overtime pay because they do not meet the test for exempt

status under either the FLSA or California law. Conversely, AGE contends that Financial Consultants are exempt from overtime under several exemptions, including but not limited to the federal and state "administrative" and "commissioned sales" exemptions. Notably, there is not a single reported case that holds that financial advisors are entitled to overtime pay under either federal or state law.

### 1.     Plaintiffs' FLSA Overtime Claims.

Under the FLSA, all employees, regardless of their title, must be paid overtime for any hours they work in excess of 40 per week, unless the employee is "exempt." 29 U.S.C. section 207(a)(1). The employer bears the burden of proving that the employee is exempt from overtime. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960).

In order to qualify for the administrative exemption, an employee must be paid on a salary or fee basis. 29 C.F.R. section 541.200(a)(1). One of the key disputes in this case is whether the guaranteed monthly draw that AGE makes to its FCs qualifies as a "salary" for purposes of the salary basis test. Although this Court, in its August 2, 2006 order denying AGE's summary judgment motion, held that AGE failed to meet its burden of showing that its draw-versus-commission plan meets the salary basis test, the U.S. Department of Labor reached a different conclusion in a November 27, 2006 opinion letter. In that letter, the DOL opined that a guaranteed draw meets the salary basis test – even if draw deficits are recouped from commissions in later months – provided that the amount of the draw does not fall below the FLSA's minimum salary threshold (currently $455/week, or $1,971.67/month). See Nov. 27, 2006 Opinion Letter, at 7-8; attached as Exh. 1 to the Compendium of Authorities, filed herewith. The DOL letter is significant because the salary basis test is a "creature of the Secretary [of Labor]'s own regulations," and the DOL's interpretation is controlling "unless plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461 (1997). At least one district court has relied on the November 27, 2006 DOL letter to hold that a draw-versus-commission plan does, in fact, meet the FLSA's salary basis test. Pontius v. Delta Financial Corp., 2007 U.S. Dist. 50980, *20-22 (W.D. Pa. March 20, 2007) *adopted at* 2007 U.S. Dist. LEXIS 34393 (W.D. Pa. May 9, 2007).

Another element of the administrative exemption is the "duties" test. 29 C.F.R. section 541.200(a)(2). Plaintiffs claim FCs are not administratively exempt because their primary duty is selling financial products. See 29 C.F.R. section 541.203(a). Conversely, AGE contends that an FC's primary

duty is to analyze the customer's financial information and advise the customer about which financial products best meet the customer's needs, which is exempt work. Id. In its November 27, 2006 opinion letter, the DOL opined that stockbrokers meet the duties test of the administrative exemption even though they spend some of their time selling financial products.

The Ninth Circuit has recently signaled an inclination to defer to the DOL when interpreting the FLSA. In Miller v. Farmers Insurance Exchange, 481 F.3d 1119 (9th Cir. 2007), the Ninth Circuit reversed an award of $52.5 million in overtime pay to a class of Farmers claims adjusters, relying in part on a DOL opinion letter holding that claims adjusters are administratively exempt under the FLSA. Here, the DOL's November 27, 2006 opinion letter holding that stockbrokers are exempt presents a significant risk to plaintiffs.

2. Plaintiffs' California Overtime Claims.

Under California law, all employees must be paid overtime for any hours they work in excess of 40 per week, or 8 per day unless the employee is "exempt." Cal. Lab. Code sections 510 and 515. California's administrative exemption is narrower and more favorable to employees that the comparable FLSA exemption, in that: (1) California has adopted a purely quantitative test for measuring exempt status (i.e., an exempt employee must spend 50% or more of his or her time on exempt administrative tasks) as opposed to the qualitative "primary duty" test under the FLSA (see Ramirez v. Yosemite Water Co., Inc., 20 Cal.4th 785, 797-98 (1999)); and (2) California's administrative exemption requires that the employee be paid a guaranteed minimum amount of not less than twice the California minimum wage (prior to January 1, 2007, equivalent to $2,340/month), whereas the FLSA's salary requirement was only $671.67/month until August 23, 2004, and $1,971.67/month thereafter (compare Cal. Labor Code section 515(a) with 29 C.F.R. section 541.600). Furthermore, California's commissioned sales exemption differs from the FLSA exemption in that California's exemption requires that an employee be "involved principally in selling a product or service." Ramirez, 20 Cal.4th at 804. Plaintiffs argue that California's commissioned sales exemption is inconsistent with the FLSA's administrative exemption, since an employee cannot simultaneously be involved principally in sales yet be administratively exempt. See 29 C.F.R. section 541.203(b) ("[A]n employee whose primary duty is selling financial products does not qualify for the administrative exemption.") In other words, under

plaintiffs' theory, if AGE attempts to invoke the California commissioned sales exemption, this would prevent AGE from invoking the FLSA's administrative exemption, and vice-versa. AGE contends however, that these exemptions are not mutually exclusive, and that an employee can qualify as exempt under both exemptions. There is no controlling appellate authority on this issue.

### 3. Plaintiffs' Claims for Wage Deductions.

Plaintiffs also seek recovery of certain expenses that, in their view, were improperly deducted from the wages of FCs. These include wages of the support staff, losses due to trading errors, marketing expenses, registration fees, and similar charges. AGE contends that these challenged practices are part of lawful commission calculations, or are expenses incurred voluntarily by the FCs.

The wage deduction and business expense claims are based on both statutory authority and a long line of cases beginning with the California Supreme Court's decision in Kerr's Catering v. Department of Industrial Relations, 57 Cal.2d 319, 329 (1962). In Kerr's, the court upheld an administrative regulation that prevented an employer from deducting losses due to cash shortages from an employee's commissions, observing that such shortages were inevitable in any business and, therefore, should be considered an ordinary cost. Later, in Quillian v. Lion Oil Company, 96 Cal.App.3d 156 (1979) and Hudgins v. Neiman-Marcus Group, Inc., 34 Cal.App.4th 1109 (1995), California appellate courts relied on Kerr's to invalidate compensation plans in which business-related expenses were deducted from employee incentive pay. Plaintiffs argue that Kerr's, Quillian, and Hudgins prevent AGE from deducting business costs from FC commissions since these costs are "expenses of management." Kerr's, 57 Cal.2d at 329.

Plaintiffs also rely on Cal. Labor Code section 2802 in support of their wage deduction claims. Section 2802 requires an employer to indemnify an employee against all "necessary" expenses the employee incurs in the course of his or her job. Plaintiffs argue that the payments to the support staff and the other business-related expenses are "necessary" because, without making such payments, the FCs cannot succeed on the job.

AGE contests the validity of plaintiffs' wage deduction claims. AGE points to the recent decisions in Steinhebel v. Los Angeles Times Communications, 26 Cal.App.4th 696 (2005) and Koehl v. Verio, 142 Cal.App.4th 1313 (2006), and argue these cases suggest it is lawful for employers to adjust

employee compensation for certain business-related expenses. AGE also argues that the validity of the Kerr's line of cases is questionable in light of the California Supreme Court's recent decision in Prachasaisoradej v. Ralphs Grocery, 42 Cal.4th 217 (2007), wherein the court decided that a compensation plan that includes business expenses in its compensation formula may be legal under California law. Lastly, AGE will argue that it pays all "necessary" expenses on behalf of its FCs, and any additional expenses they may incur are voluntary. In its ruling on AGE's summary judgment motion, this Court ruled that whether an expense is "necessary" is a question of fact and, accordingly, it is unlikely that this issue could have been resolved short of trial.

    4.    <u>Summary.</u>

Unlike a garden-variety securities class action, where the law is relatively settled and the path to recovery has been paved by a prior SEC or criminal investigation, here plaintiffs and Class Counsel were operating in completely uncharted territory. Although plaintiffs believe strongly in the merits of their case, the outcome was far from certain given the unsettled state of the law. Therefore, the "strength of plaintiffs' case" factor weighs in favor of settlement.

    B.    <u>The Risk, Expense, Complexity and Likely Duration of Further Litigation.</u>

This case involves over 1,300 class members and six causes of action for which certification was sought. If this case had not settled, class certification, discovery, and trial preparation would have been extremely time consuming and expensive.

First, as the Court is aware, the motion for class certification was hotly contested. Indeed, the fully briefed class certification motion and supporting evidence, as well as the opposing submissions, are collectively more than two feet thick. Second, if the Court granted plaintiffs' motion and certified the class, AGE would have sought to take the depositions of a cross-section of the class. In a class of this size, this might have entailed at least 100 class member depositions, which would have been a costly and time-consuming exercise. Third, in overtime class actions, the parties often retain job analysis experts to assess how class members spend their time. The cost of these experts could easily have run into the hundreds of thousands of dollars. Fourth, even if discovery proceeded smoothly, the case would not have been ready for trial until at least 2008, and if plaintiffs won, AGE would have appealed, thereby delaying payment to the class for several more years.

The history of the two lawsuits against Farmers Insurance Exchange aptly illustrate the risk, delay, and expense associated with litigating an overtime class action. The California case, Bell v. Farmers Insurance Exchange, was one of the first lawsuits filed in California seeking recovery of overtime pay on behalf of claims adjusters. Bell was originally filed on October 2, 1996. After the class was certified, 295 class member depositions were taken, and the case was tried to a jury in 2001. Judgment was entered for plaintiffs. However, as a result of multiple intervening appeals, which resulted in four published appellate opinions – 87 Cal.App.4th 805 (2001); 115 Cal.App.4th 715 (2004); 135 Cal.App.4th 1138 (2006) and 137 Cal.App.4th 835 (2006) – the class members were not paid until mid-2005, nine years after the lawsuit was originally filed. Id., 137 Cal.App.4th at 838. The federal case, In Re: Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation, MDL 33-1439, was an MDL proceeding consolidated in the District of Oregon. The first case was originally filed in 2001. In 2003, the district court conducted a three-week bench trial, and on November 3, 2003, the court ruled that certain claims adjusters were entitled to overtime pay. Id., 300 F. Supp. 2d 1020. Subsequently, a $52.5 million judgment was entered for plaintiffs. However, on March 30, 2007, six years after the original lawsuit was filed, the Ninth Circuit reversed the district court and entered judgment for Farmers. Miller, supra, 481 F.3d 1119.

Like the Farmers cases, this case involves a novel application of the overtime laws to positions that have historically been regarded as exempt. The risk, expense, and delay associated with litigating such a case weighs in favor of approving the settlement.

    C.    The Risk of Maintaining Class Action Status Throughout the Trial.

Plaintiffs and Class Counsel strongly believe that their lawsuit is maintainable as a class action. However, there are risks associated with the class certification issue. For example, AGE argued that class certification is inappropriate because the primary duty of an FC varies based on that person's book of business, experience level, training, and business focus (individual versus institutional investors). AGE also argued that an FC's right to recover business expenses depends on whether the particular expense is "necessary" under Cal. Labor Code § 2802, which according to AGE requires an individualized determination. Plaintiffs acknowledge that AGE's arguments do present some risk. Consequently, this factor suggests that settlement is preferable to continued litigation.

      D.     <u>The Amount Offered in Settlement.</u>

According to plaintiffs' damages calculations, the $20 million monetary payment, coupled with the $1.3 million AGE previously paid to class members as a direct result of this case, represents approximately one-third of AGE's overall exposure on the overtime and business expense claims. Clapp declaration, ¶¶ 6 and 11. Viewed another way, this 33% figure equates to a 67% chance of prevailing on class certification and a 50% chance of prevailing on all claims at the time of trial: (.67 x .50=.33). This risk assessment is reasonable given the novelty of the claims and the uncertainties in the law discussed above.

Furthermore, as far as the amount class members will receive on a per month basis, this settlement compares very favorably to the settlement reached in <u>Garett v. Morgan Stanley DW, Inc.</u>, Case No. 04-CV-1858 BEN (S.D. Cal.), which was brought on behalf of Morgan Stanley's California-based financial advisors. The <u>Garett</u> case alleged substantially the same claims as this case, and the class members received approximately $219 per month after deduction of attorney's fees, litigation expenses, and cost of claims administration. As noted, the per-month payment to FCs in this case will be $275.00, which considerably exceeds the amount that Morgan Stanley's financial advisors received – a notable achievement in light of the intervening November 27, 2006 DOL opinion letter. Clapp declaration, ¶ 6. Accordingly, this factor weighs in favor of approval as well.

      E.     <u>The Extent of Discovery Completed and the Stage of the Proceedings.</u>

As discussed above, in the months leading up to the settlement, the parties exchanged initial disclosures, written discovery, thousands of pages of documents, and took numerous depositions. The parties litigated a very complex motion for summary judgment and fully briefed a motion for class certification. Class Counsel fully understood the duties and responsibilities of FCs, AGE's compensation policies, and the composition of the class. AGE also provided detailed spreadsheets reflecting AGE's potential exposure on the overtime and business expense claims. Class Counsel has more than enough information to assess the fairness of this settlement. Clapp declaration, ¶ 3.

      F.     <u>The Experience and Views of Counsel.</u>

Plaintiffs' attorneys are experienced in this area of law. James F. Clapp of Dostart Clapp Gordon & Coveney, LLP, has been appointed lead plaintiffs' counsel in more than 25 certified class actions

alleging violations of federal and/or state wage and hour laws. Importantly here, on September 12, 2006, Mr. Clapp obtained final approval of a $42.5 million settlement brought on behalf of financial advisors of Morgan Stanley, Garett v. Morgan Stanley, S.D. Cal. Case No. 04-1858. Mr. Clapp also was plaintiff's co-counsel of record in Burns v. Merrill Lynch, Case No. 04-4135-MMC, approved by the Northern District of California on February 17, 2006, which was the first overtime class action brought on behalf of financial advisors in California that ever reached a settlement. Mr. Clapp is co-lead plaintiffs' counsel in Bahramipour v. Citigroup Global Markets Inc., N.D. Cal. Case No. 04-0440-CW, a class action brought on behalf of financial advisors of Smith Barney/Citigroup, in which the district court ruled that a California employee is entitled to recover overtime pay owed under the FLSA pursuant to a Rule 23 class action brought under California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 et seq. See Bahramipour, 2006 U.S. Dist. LEXIS 9010 (N.D. Cal. Feb. 22, 2006). Mr. Clapp is also actively involved in several other wage and hour lawsuits against financial services companies throughout the United States. Mr. Clapp has testified before the California State Assembly on proposed legislation concerning the deduction of business expenses from commission wages. Mr. Clapp graduated from Northwestern University School of Law and has been litigating complex employment and business lawsuits, with a special emphasis on wage and hour law class actions, in California for the last 17 years. Clapp declaration, ¶ 2.

Kevin J. McInerney of McInerney & Jones is even more experienced. Mr. McInerney graduated from Yale Law School in 1967. He has tried over 300 cases and handled more than fifty appeals. Since 1988, his practice has been limited almost exclusively to class actions. For the past seven years, the vast majority of cases he has handled have been wage and hour class actions brought on behalf of employees. His firm has been involved in excess of fifty class actions in state and federal courts where it has been alleged that the employees were improperly misclassified as exempt from the protection of overtime laws. Declaration of Kevin J. McInerney, filed herewith, at ¶¶ 2-5.

Both Mr. Clapp and Mr. McInerney support the settlement and believe that the settlement is fair, reasonable, and in the best interests of the class. Clapp declaration ¶ 11; McInerney declaration, ¶ 7. This factor weighs in favor of preliminary approval.

    G.    <u>The Reaction of the Class to the Settlement.</u>

As evidenced by the fact that nearly 95% of the funds available to the class has been claimed, the class has resoundingly approved the settlement. Only 5 class members, representing less than 0.004% of the class, have requested exclusion. By way of comparison, in <u>Sommers v. Abraham Lincoln Federal Savings & Loan Association</u>, 79 F.R.D. 571 (E.D. Pa. 1978), the district court found that an opt-out rate of 4.25% (8,000 opt-outs out of 188,000 class members) was a factor that <u>supported</u> approval of the settlement. Most importantly, no class member has objected to the settlement. The favorable reaction of the class members warrants approval of the settlement.

## V. **CONCLUSION.**

After weighing all of the factors cited by the Ninth Circuit, there is little doubt that the proposed settlement is fair, reasonable, and in the best interests of the class members. The class resoundingly approves of this settlement, as evidenced by the extremely high claims rate, the minimal number of opt-outs, and the complete absence of objectors. For all of the foregoing reasons, the Court should grant plaintiffs' motion for final approval.

Dated: October 5, 2007        DOSTART CLAPP GORDON & COVENEY, LLP
McINERNEY & JONES

_/s/ James F. Clapp_
JAMES F. CLAPP
Attorneys for Plaintiffs

77238