1   James F. Clapp, Esq.  SBN 145814
    J. Kirk Donnelly, Esq. SBN 179401
2   Marita M.  Lauinger, Esq.  SBN 199242
    DOSTART CLAPP GORDON & COVENEY, LLP
3   4370 La Jolla Village Dr., Suite 970
    San Diego, CA 92122
4   Telephone:     (858) 623-4200
    Facsimile:      (858) 623-4299
5
    Kevin J. McInerney, Esq., SBN 46941
6   Kelly McInerney, Esq., SBN 200017
    Charles A.  Jones, Esq., SBN 224915
7   MCINERNEY & JONES
    18124 Wedge Parkway #503
8   Reno, NV 89511
    Telephone:  (775) 849-3811
9   Facsimile:   (775) 849-3866

10  Attorneys for Plaintiffs

11

12

13              **UNITED STATES DISTRICT COURT**

14           **SOUTHERN DISTRICT OF CALIFORNIA**

15

16  **DREW TAKACS** and **RYAN FLYNN,**          **Case No. 04-CV-1852 JAH (NLS)**
    individually and on behalf of all others
17  similarly situated,                          **PLAINTIFFS' APPLICATION
                                                 FOR AWARD OF ATTORNEY'S**
                   Plaintiffs,                   **FEES, LITIGATION COSTS, AND
18                                               CLASS REPRESENTATIVE
                                                 ENHANCEMENT AWARDS**
19            v.

20  **A.G. EDWARDS & SONS, INC.**                Date:  November 5, 2007
                                                 Time:  2:30 p.m.
21                 Defendant.

22                                               Judge:  Hon. John A. Houston

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................ ii

I.   INTRODUCTION ....................................................................................... 1

II.  THE COURT SHOULD AWARD THE REQUESTED ATTORNEY'S FEES
     AND COSTS FROM THE COMMON FUND ............................................. 2

III. AN UPWARD ADJUSTMENT OF THE FEE AWARD IS WARRANTED
     HERE ............................................................................................................ 5

     A. Experience of Class Counsel ................................................................. 6

     B. The Outstanding Nature of the Settlement ............................................ 6

     C. Extremely High Participation in the Settlement .................................... 7

     D. Extremely Low Percentage of Exclusions ............................................. 7

     E. Novelty and Complexity of the Issues ................................................... 8

     F. The Risk Undertaken .............................................................................. 8

     G. The Work Performed .............................................................................. 8

     H. The Absence of Objections .................................................................... 9

IV.  THE COURT SHOULD APPROVE THE REQUESTED LITIGATION
     EXPENSES ................................................................................................... 9

V.   THE CLASS REPRESENTATIVES SHOULD BE AWARDED THE
     REQUESTED ENHANCEMENTS .............................................................. 10

VI.  CONCLUSION ............................................................................................. 11

i

# TABLE OF AUTHORITIES

**STATE CASES**

Koehl v. Verio
142 Cal.App.4th 1313, 1328 (2006) ..................................................................... 10

**FEDERAL CASES**

In Re Activision Sec. Litig.
723 F.Supp. 1373, 1378-79 (N.D. Cal. 1989)......................................................... 5

Blum v. Stenson
465 U.S. 886, 900 n.16 (1984) ............................................................................... 3

Boeing Co. v. Van Gemert
444 U.S. 472, 478 (1980)............................................................................... 2, 3, 5

In re Businessland Sec. Litig.
1991 U.S. Dist. Lexis 8962, at *6 (N.D. Cal. June 18, 1991)................................. 9

Camden I Condominium Assoc., Inc. v. Dunkle
946 F.2d 768, 773 (11th Cir. 1991)........................................................................ 4

Class Plaintiffs v. Jaffe & Schlesinger, P.A.
19 F.3d 1306, 1308 (9th Cir. 1994)........................................................................ 3

Florida v. Dunne
915 F.2d 542, 545 (9th Cir. 1990)........................................................................... 4

Hein v. PNC Fin. Servs. Group, Inc.
2007 U.S. Dist. LEXIS 44569 (E.D. Pa. June 20, 2007) ....................................... 7

League of Martin v. City of Milwaukee
588 F. Supp. 1004 (E.D. Wis. 1984)..................................................................... 10

Lo Re v. Chase Manhattan Corp.
1979 U.S. Dist. LEXIS 12210 at *16-17 (S.D.N.Y. May 23, 1979) ..................... 10

Morris v. Lifescan, Inc.
54 Fed. Appx. 663 (9th Cir. 2003) .......................................................................... 5

In Re Pacific Enterprises Sec. Litig.
47 F.3d 373, 378-79 (9th Cir. 1995) .................................................................... 4, 5

Paul, Johnson, Alston & Hunt v. Graulty
886 F.2d 268, 271 (9th Cir. 1989)..................................................................... 4, 5, 6

ii

In Re Oracle Sec. Litig.
131 F.R.D. 688, 689 (N.D. Cal. 1990) .................................................................... 5

In re Rite Aid Corp. Sec. Litig.
396 F.3d. 294, 300 (3d Cir. 2005) ........................................................................ 3

Six Mexican Workers v. Arizona Citrus Growers
904 F.2d 1301, 1311 (9th Cir. 1990) ................................................................ 4, 5

Sprague v. Ticonic National Bank
307 U.S. 161 (1939) ............................................................................................ 4

Staton v. Boeing Co.
327 F.3d 938, 967 (9th Cir. 2003) ........................................................................ 3

Takacs v. A.G. Edwards & Sons, Inc.
444 F.Supp.2nd 1100 (S.D. Cal. 2006) .................................................................. 2

Vincent v. Hughes Air West. Inc.
557 F.2d 759, 769 (9th Cir. 1977) ........................................................................ 3

Williams v. MGM-Pathe Communications Co.
129 F.3d 1026,1027 (9th Cir. 1997) ................................................................. 4, 5

**SECONDARY AUTHORITIES**

Newberg on Class Actions, §14.6, at p. 550 (4th ed. 2002) ...................................... 5

Posner, Economic Analysis of Law, § 21.9, at 534-35 (2d ed. 1984) ................................ 3, 4

U.S. Department of Labor, Nov. 27, 2006 Opinion Letter ..................................... 7, 8

## I.    **INTRODUCTION**

Class Counsel, representing plaintiffs/Class Representatives Drew Takacs, Ryan Flynn, and Caitlin Manoogian, and the plaintiff class, respectfully move this Court for an award of attorney's fees, litigation costs, and for enhancement awards to the three Class Representatives. As discussed in detail in plaintiffs' Motion for Final Approval of Class Action Settlement, filed concurrently herewith, this is a class action for unpaid overtime and recovery of unreimbursed business expenses brought on behalf of the California-based Financial Consultants ("FCs") of defendant A.G. Edwards & Sons, Inc. ("AGE"). To resolve these claims, Class Counsel, the law firms of Dostart Clapp Gordon & Coveney LLP and McInerney & Jones, negotiated a $20 million settlement fund on behalf of the Class. Additionally, in December 2004, and as a direct result of the filing of this lawsuit, AGE paid class members over $1.3 million in an attempt to retroactively satisfy the California salary basis test.[1]  Accordingly, the actual monetary benefit to the class generated by this case and Class Counsel's efforts totals $21.3 million.

For their efforts in achieving this result, Class Counsel seek a fee award of $6,000,000, representing 28.17% of the overall monetary recovery. The Stipulation of Class Action Settlement ("Stipulation"), at Section VI, p.9 (Docket No. 210) specifically referenced this amount, and this amount likewise was specifically set forth in this Court's Notice to the class in Section 4(E), at p. 3, of the Notice (Exhibit 2 to Stipulation). Class Counsel also seek reimbursement of their out-of-pocket litigation costs in the amount of $93,914.51. Additionally, Class Counsel seek enhancement awards for the three Class Representatives in the amount of $25,000 each.  The requested enhancements likewise were specifically referenced in the Stipulation and Class Notice. See Stipulation, section VII, at pp. 10-11, and Exhibit 2 thereto. Lastly, AGE does not oppose Class Counsel's request for either attorney's fees and costs, or the class representative enhancements.

---

[1]    See Declaration of James F. Clapp filed in support of Motion for Final Approval ("Clapp declaration"), ¶ 11.

1    While the requested attorney's fee is slightly higher than the Ninth Circuit benchmark of a

2    25% attorney's fee in a common fund recovery, it is amply justified by the particular factors

3    present in this settlement.  Those specific factors include: (a) the experience of Class Counsel; (b)

4    the outstanding nature of the settlement; (c) the extremely high participation in the settlement by

5    the class members (82.5% of the class filed claims, representing at least 92% of the work months

6    at issue); (d) the extremely low percentage of opt-outs (5 out of 1,305 class members, or less than

7    0.004%); (e) the novelty and complexity of the legal and factual issues presented; (f) the risk

8    undertaken by Class Counsel; (g) the work performed and result achieved by Class Counsel; and

9    (h) the complete absence of objections by any class members to the requested award of fees, or

10   the settlement as a whole.  Likewise, there were no objections to the requested enhancement

11   awards to the three Class Representatives, and the requested awards are reasonable in light of the

12   risk they undertook and the valuable assistance they provided to Class Counsel.

13   Unlike some settlements, which occur early in the litigation, this case has been

14   extensively litigated since its commencement on June 30, 2004.  This Court authored an extensive

15   opinion last year (<u>Takacs v. A.G. Edwards & Sons, Inc.</u>, 444 F.Supp.2nd 1100 (S.D. Cal. 2006))

16   and, although rendered moot by this settlement, the parties fully litigated and briefed the motion

17   for class certification.  Consequently, this Court is in an unusually good position to assess the

18   instant application for fees, as it is fully aware of the complex issues this case presents, as well as

19   the effort undertaken by Class Counsel to achieve this result.

20   Accordingly, Class Counsel respectfully request that the Court approve their <u>unopposed</u>

21   requests for attorney's fees, litigation costs, and enhancement awards to the class representatives.

22   **II.    THE COURT SHOULD AWARD THE REQUESTED ATTORNEY'S FEES AND**
23   **COSTS FROM THE COMMON FUND**

24   For well over a century, federal and state courts have recognized that when counsel's

25   efforts result in the creation of a common fund that benefits plaintiffs and unnamed class

26   members, counsel have an equitable right to be compensated from that fund as a whole for their

27   successful efforts in creating it.  <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472, 478 (1980) (the United

28   States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a

common fund ... is entitled to a reasonable attorney's fee from the fund as a whole"); <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 967 (9th Cir. 2003) (same). "In assessing attorneys' fees, courts typically apply either the percentage-of-recovery or the lodestar method. The percentage-of-recovery method is generally favored in common fund cases because it allows courts to reward fees from the fund in a manner that rewards counsel for success and penalizes it for failure." <u>In re Rite Aid Corp. Sec. Litig.</u>, 396 F.3d 294, 300 (3d Cir. 2005).

Here, Class Counsel request an award of a percentage of the total recovery for the class under the common fund doctrine, which rests on the understanding that attorneys should normally be paid by their clients, and that unless attorneys' fees are paid out of the common fund where the attorneys' unnamed class member "clients" have no express retainer agreement, those who benefited from the fund without contributing to those who created it would be unjustly enriched. <u>Boeing</u>, 444 U.S. at 478. "[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys fees." <u>Vincent v. Hughes Air West. Inc.</u> 557 F.2d 759, 769 (9th Cir. 1977); <u>see also</u> <u>Class Plaintiffs v. Jaffe & Schlesinger, P.A.</u>, 19 F.3d 1306, 1308 (9th Cir. 1994). The traditional method for calculating a fee award in common fund cases is to award counsel a percentage of the total fund. <u>Blum v. Stenson</u>, 465 U.S. 886, 900 n.16 (1984).

The attorney's fee award is the compensation for the effort expended to benefit the class. It has been long recognized that attorneys should be encouraged to take on actions such as this in order to protect employees who have relatively small individual claims but have nonetheless been wronged. The cases recognize that counsel will not undertake actions of this nature unless they can receive adequate compensation for (i) their time, (ii) the risk of not prevailing, (iii) the delay in receipt of fees, and (iv) the investment (money as well as time) that must be made in complex cases such as this one. As Judge Richard Posner stated:

> It has been argued that contingent fees are often exorbitant; but it is easy to be misled here. A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The interest rate on such a loan is higher because the risk of default (loss of the case, which cancels the debt of the client to the lawyer) is so much

higher than that of conventional loans.  Posner, <u>Economic Analysis of Law</u>, §
21.9, at 534-35 (2d ed. 1984).

The Ninth Court has identified three factors to be examined in order to determine if
attorney's fees may be awarded out of a common fund.  <u>Paul, Johnson, Alston & Hunt v. Graulty</u>,
886 F.2d 268, 271 (9th Cir. 1989).  Each of these factors applies in this case.  <u>First</u>, the class of
beneficiaries is identifiable.  Here, the parties have identified each of the class members by
reviewing AGE's employment records.  <u>Second</u>, the benefits are easily traceable.  The benefits
consist entirely of monetary payments directly to the class members.  Furthermore, each class
member has an "undisputed and mathematically ascertainable claim" to a share of the settlement
based on the number of months he or she was employed as a financial consultant during the class
period.  <u>Third</u>, the fee can be shifted with exactitude, since Class Counsel are claiming a specific,
lump-sum percentage of the total settlement amount.

Under the common fund doctrine, courts typically award attorney's fees based on a
percentage of the total settlement.  As the Ninth Circuit wrote in <u>Six Mexican Workers v. Arizona
Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990), "[a]lthough statutory awards of attorneys
fees are subject to 'lodestar' calculation procedures, a reasonable fee under the common fund
doctrine is calculated as a percentage of the recovery."  Every Supreme Court case that has
considered the award of attorney's fees under the common fund doctrine has determined those
fees as a percentage of the recovery.  <u>See</u> <u>Camden I Condominium Assoc., Inc. v. Dunkle</u>, 946
F.2d 768, 773 (11th Cir. 1991) <u>citing</u> <u>Blum v. Stenson</u>, 465 U.S. at 900 n.16 (noting that the
percentage of recovery method is the appropriate method to award attorney's fees in common
fund cases); <u>Sprague v. Ticonic National Bank</u>, 307 U.S. 161 (1939) (same).

In the Ninth Circuit, district courts have the discretion to use either the percentage of the
fund or the lodestar method to calculate attorney's fees.     <u>Williams v. MGM-Pathe
Communications Co.</u>, 129 F.3d 1026,1027 (9th Cir. 1997).  Nevertheless, the Ninth Circuit has
also recognized a "ground swell of support for mandating a percentage-of-the-fund approach in
common fund cases . . . ."  <u>Florida v. Dunne</u>, 915 F.2d 542, 545 (9th Cir. 1990); <u>In Re Pacific
Enterprises Sec. Litig.</u>, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee of 33 1/3 %

1  of the recovery); <u>Morris v. Lifescan, Inc.</u>, 54 Fed. Appx. 663 (9th Cir. 2003) (affirming fee award

2  of 33% of the recovery).

3   Further, district courts in California have held that the percentage of the fund method is far

4  preferable to the lodestar method because: (1) it aligns the interests of Class Counsel and the

5  class; (2) it encourages efficient resolution of the litigation by providing an incentive for early,

6  yet reasonable, settlement; and (3) it reduces the demands on judicial resources.  <u>In Re Oracle

7  Sec. Litig.</u>, 131 F.R.D. 688, 689 (N.D. Cal. 1990) (noting that the lodestar method has been

8  "thoroughly discredited by experience"); <u>In Re Activision Sec. Litig.</u>, 723 F.Supp. 1373, 1378-79

9  (N.D. Cal. 1989). Criticizing the lodestar method, Judge Patel forcefully wrote in <u>In re Activision</u>:

10   "The question this court is compelled to ask is, 'Is this process necessary?' Under a cost-
11  benefit analysis, the answer would be a resounding, 'No!' Not only do the *Lindy* and *Kerr-Johnson* analyses consume an undue amount of court time with little resulting advantage
   to anyone, but, in fact, it may be to the detriment of the class members. They are forced to
12  wait until the court has done a thorough, conscientious analysis of the attorneys' fee
   petition. Or, class members may suffer a further diminution of their fund when a special
13  master is retained and paid from the fund. Most important, however, is the effect the
   process has on the litigation and the timing of settlement. Where attorneys must depend on
14  a lodestar approach there is little incentive to arrive at an early settlement." <u>Id.</u>

15  **III.** <u>**AN UPWARD ADJUSTMENT OF THE FEE AWARD IS WARRANTED HERE**</u>

16   Historically, attorney's fee awards have ranged from 20% to 50% of the total settlement

17  fund, depending on the circumstances of the case.  <u>Newberg on Class Actions</u>, §14.6, at p. 550

18  (4th ed. 2002). The Ninth Circuit has established a "benchmark" fee of 25% in common fund

19  cases. <u>Six Mexican Workers</u>, <u>supra</u>, 904 F.2d at 1311; <u>Williams</u>, <u>supra</u>, 129 F.3d at 1027; <u>Paul,

20  Johnson</u>, <u>supra</u>, 886 F.2d at 272. The percentage of recovery is based on the <u>potential</u> amount

21  available to be claimed by the class, not the actual amount claimed.  <u>Van Gemert</u>, <u>supra</u>, 444 U.S.

22  at 477-82; <u>Williams</u>, 129 F.3d at 1027.

23   Under Ninth Circuit precedent, the district court has the discretion to adjust the 25%

24  benchmark upward or downward, but such an adjustment is warranted only in "unusual

25  circumstances."  As the Ninth Circuit explained in <u>Paul, Johnson</u>:

26  ///

27  ///

28  ///

"The sole remaining issue is what percentage of the common fund would provide [plaintiffs' attorneys] reasonable compensation. . . . We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent. [Citation.]  That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case. If such an adjustment is warranted, however, we caution that it must be made clear by the district court how it arrives at the figure ultimately awarded."  886 F.2d at 272.

As indicated earlier, there are seven factors present in this settlement that allow this Court to make a modest upward departure from the benchmark.  Each of these factors is analyzed below.

### A.   Experience of Class Counsel

Class Counsel brought a formidable amount of litigation experience and specialized wage and hour expertise forward in their representation of the class.  As seen from the accompanying declarations of James F. Clapp and Kevin J. McInerney, they have between them, handled and tried a large number of class actions.  In particular, they have guided through contested certifications and successful resolution of dozens of wage and hour class actions.  Members of their firms have over twenty-five years of combined experience in actively litigating wage and hour class suits.  Clapp declaration, ¶ 2;  Declaration of Kevin J. McInerney, filed herewith, at ¶ 3.

There is a shared commitment that maximum benefits to the class can only be obtained when Class Counsel have demonstrated a willingness to try cases when favorable settlements are not offered.  For example, Class Counsel obtained a $31.5 million arbitration award on behalf of Pep Boys' store managers and a settlement after a finding of liability at trial on behalf of insurance adjusters for Fireman's Fund in the amount of $18.5 million.  Several of the counsel for the class are set to start a two to three month trial on November 6, 2007 on behalf of assistant managers employed by Staples, Inc.  McInerney declaration, ¶ 4.

### B.   The Outstanding Nature of the Settlement

As noted, the settlement sum of $20,000,000, coupled with $1.3 million "true up" payment made by AGE in December 2004, represents approximately one-third of the defendant's overall exposure on the overtime and expense reimbursement claims alleged   Clapp declaration, ¶ 6, 11.  Given the lack of appellate law in this area, this was a very solid resolution, especially

1    considering the November 27, 2006 Opinion Letter issued by the Department of Labor.  In fact, in

2    recent months, at least one district court relied on that Opinion Letter in ruling that a stockbroker

3    is administratively exempt under federal law.  Hein v. PNC Fin. Servs. Group, Inc., 2007 U.S.

4    Dist. LEXIS 44569 (E.D. Pa. June 20, 2007).  Given the substantial risks posed by these recent

5    developments in the law, Class Counsel believe they have achieved an excellent result here.

6         **C.    Extremely High Participation in the Settlement**

7         In wage and hour class action cases, one can evaluate participation in terms of the number

8    of potential class members who submitted claims or in terms of the overall work weeks or work

9    months that were claimed by those claimants.  The latter approach is far more accurate because

10   individuals who are employed for only a month or a few months during the class period often

11   ignore the claims procedure.  In the instant case, this is clearly observable.  The class here

12   numbered 1,305 individuals and, 1,084, or 82.5%, timely submitted claims.  More importantly,

13   those 1,084 claimants accounted for at least 92.3% of all the work months included in the class

14   period and, once the handful of disputed claims are resolved, Class Counsel estimate that number

15   will be approximately 95%.  A claim rate in a wage and hour case of approximately 95% is

16   extremely high and truly exceptional.  As noted in the accompanying declaration of Class

17   Counsel Kevin J. McInerney, who has handled and/or is familiar with scores of wage and hour

18   class actions, the instant claim rate has been exceeded in only one other case.  McInerney

19   declaration, ¶ 7.

20        **D.    Extremely Low Percentage of Exclusions**

21        Just as the participation in this settlement has been extremely high, the exclusion rate has

22   been remarkably low.  In wage and hour cases defendant employers commonly are concerned

23   with exclusions because they fear individual lawsuits.  As discussed in the attached Declaration of

24   Kevin J. McInerney, it is common for settling employers to insert a provision that if the number

25   of exclusions reaches five or ten percent the defendant has the right to withdraw from the

26   settlement.  McInerney declaration, ¶ 8.  In fact, the Stipulation in this case provided that if 7.5%

27   or more of the class opted out, AGE had an absolute right to terminate the settlement (Stipulation,

28   Section II, ¶ C, at p. 6).  However, of the 1,305 potential class members, only five chose to

PLS' APPLICATION FOR AWARD OF ATTORNEY'S FEES AND LITIGATION COSTS     04-CV-1852 JAH

1   exclude themselves.  This amounts to less than 0.004%.  This is another strong indicator that the

2   proposed settlement was well received by the class members.

3       **E.**    <u>**Novelty and Complexity of the Issues**</u>

4       Having authored a twenty-six page decision on summary judgment, this Court is acutely

5   aware of the intricacies of both the facts and the law implicated in this action, which also are

6   discussed in detail in the accompany Motion for Final Approval. The very idea that stockbrokers

7   could recover for wage deductions and were entitled to overtime was absolutely novel when

8   unveiled some three years ago by Class Counsel.  The delicate interplay of federal and state

9   statutes, regulations, and opinion letters utilized to bolster such claims were initially derided by

10  some defense counsel as a "house of cards." Class Counsel in this case demonstrated that their

11  theories were something more than that in defeating AGE's motion for summary judgment and

12  pursuing the case through the instant settlement.

13      **F.**    <u>**The Risk Undertaken**</u>

14      In forging new legal theories to allow stockbrokers to recover for wage deductions and to

15  claim overtime under both California and federal law, Class Counsel necessarily assumed unique

16  risks.  Over and above the normal risks of class certification and trial, they assumed extraordinary

17  risks of venturing into an area of employment law where there were no trial level decisions on

18  point, let alone appellate decisions.  This case was filed at a time when the U.S. Department of

19  Labor and several District Courts had, in an analogous line of cases, written against insurance

20  adjusters seeking overtime and at a time when employers were uniting and rallying against all

21  overtime claims.  It is easy to say from the vantage of the now-achieved settlement that the legal

22  theories forged more than three years ago were fundamentally sound, but it did not always seem

23  so.  Indeed, this Court certainly saw one example of a potential obstacle that appeared in the form

24  of the November 27, 2006 Opinion Letter from the Department of Labor.  Plainly, this case posed

25  a substantial risk to Class Counsel of recovering nothing for their considerable efforts.

26      **G.**    <u>**The Work Performed**</u>

27      The physical weight of the pleadings in this case is enormous.  The Court is well capable

28  of evaluating the quality of those pleadings submitted by the attorneys for both sides and the

arguments that were advanced.  The Court will recall that the motion for class certification was fully briefed but was set aside so that the defendant's motions for summary judgment could proceed.  After denial of that motion, the parties completed extensive class certification briefing.  In addition to the considerable effort devoted to the summary judgment and class certification briefing, Class Counsel also briefed several additional motions brought by both sides, took the depositions of AGE's corporate representatives, defended the depositions of the three Class Representatives, engaged in extensive written discovery, including review of over 13,000 pages of relevant documents produced by AGE, interviewed and/or obtained statements from over 50 putative class members, and participated in two mediations and the extensive follow up negotiations necessary to finalize this settlement.   Clapp declaration, ¶ 3.   At bottom, Class Counsel had to put forth a substantial effort in response to AGE's scorched earth defense.

### H.   The Absence of Objections

Not a single class member has objected to the proposed award of attorney's fees and costs. The class notice specifically mentioned that Class Counsel would seek an award of $6,000,000, and up to $100,000 in litigation expenses.  Considering the overall sophistication of the class members in this case, one would expect that if any class member was disturbed by the requested fee, they would have objected appropriately.

## IV.   THE COURT SHOULD APPROVE THE REQUESTED LITIGATION EXPENSES

Under the common fund approach, the prevailing view is that litigation expenses are awarded in addition to the fee percentage.  In re Businessland Sec. Litig., 1991 U.S. Dist. Lexis 8962, at *6 (N.D. Cal. June 18, 1991) (overruling objection that litigation expenses should be included in the requested 30% fee).  In this case, Section VI of the Stipulation provides that Class Counsel may petition the Court for an award of up to $100,000 in litigation expenses.  As set forth in the accompanying Clapp and McInerney declarations, Class Counsel incurred a combined $93,914.51 in litigation expenses.  Clapp declaration, ¶ 9; McInerney declaration, ¶ 9.  These expenses included filing costs, service costs, copying and postage charges, legal research costs, travel expenses and mediation fees.  Class Counsel respectfully request that the Court approve their request for reimbursement of litigation expenses in full.

## V.   THE CLASS REPRESENTATIVES SHOULD BE AWARDED THE REQUESTED ENHANCEMENTS

Section VII of the Stipulation permits Class Counsel to request service payments to the three Class Representatives, Drew Takacs, Ryan Flynn, and Caitlin Manoogian, in the amount of $25,000 each.  All three Class Representatives provided substantial and invaluable assistance to Class Counsel throughout the case and incurred personal risk in bringing the lawsuit on behalf of the class.  Clapp declaration, ¶ 10; see also Koehl v. Verio, 142 Cal.App.4th 1313, 1328 (2006) (in wage and hour class action where defendant prevailed at trial, the named plaintiffs were held liable, jointly and severally, for the defendant's attorneys' fees).

Such service payments are recognized as serving an important function in promoting class action settlements, particularly where the named plaintiffs participated in the litigation.  In League of Martin v. City of Milwaukee, 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff individual relief.  It is "not uncommon for class members . . . to receive special treatment in settlement," especially when they have been instrumental in prosecuting the lawsuit.  Id. at 1024.  Similarly, in Lo Re v. Chase Manhattan Corp., 1979 U.S. Dist. LEXIS 12210 at *16-17 (S.D.N.Y. May 23, 1979), the court approved payment of $229,000 out of a $1,579,000 settlement fund to the named plaintiffs, which represented the full value of their individual claims.  One of the factors considered by the court in determining that such payments were fair was the fact that none of the absent class members had objected to these payments; another was the fact that plaintiffs' efforts conferred a benefit on a substantial number of people.  Id. at *17.

In the present case, Takacs, Flynn and Manoogian all provided invaluable assistance to Class Counsel in litigating the case.  They explained AGE's compensation policies, helped locate witnesses, and reviewed documents.  All three worked extensively with Class Counsel to respond to substantial written discovery, including interrogatories and document requests.  AGE deposed each Class Representative for a full day, and all three participated in lengthy deposition preparation.  Each provided multiple declarations in support of the opposition to AGE's summary judgment motion, plaintiffs' class certification motion, and other law and motion initiated by both

sides.  All three worked with Class Counsel on the settlement negotiations and finalizing the settlement documents.  Their efforts in bringing the lawsuit have conferred a substantial benefit on over 1,300 class members through the instant settlement.  Clapp declaration, ¶ 10.  Lastly, there has been no objection to the service payments by any member of the class.  Accordingly, Class Counsel respectfully request that the Court approve the requested enhancement awards to Messrs. Takacs and Flynn and Ms. Manoogian.

**VI.    CONCLUSION**

For all the foregoing reasons, Class Counsel respectfully request that the Court grant their unopposed motion for attorney's fees, litigation costs and class representative enhancement awards, and issue an order approving the award of $6,000,000 in attorney's fees, $93,914.51 in litigation costs, and an enhancement award of $25,000 to each of the three Class Representatives.

Dated: October 5, 2007

DOSTART CLAPP GORDON & COVENEY, LLP
McINERNEY & JONES

JAMES F. CLAPP
Attorneys for Plaintiffs